# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

v.  Criminal Action No. 2:14-cr-42-1

**JONATHAN PAUL CALAIN,**
  **Defendant.**

## OPINION/ REPORT AND RECOMMENDATION
## CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Jonathan Paul Calain, in person and by counsel, Todd La Neve, appeared before me on February 10, 2015. The Government appeared by Assistant United States Attorney Stephen Warner. The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count One of the Superseding Indictment.

The Court proceeded with the Rule 11 proceeding by first placing Defendant under oath.

The Court inquired of Defendant whether he was a citizen of the United States. Defendant responded that he is a citizen. The undersigned asked Defendant whether he understood that if he were not a citizen of the United States, by pleading guilty to a felony charge he would be subject to deportation at the conclusion of any sentence; that he would be denied future entry into the United States; and that he would be denied citizenship if he ever applied for it. Defendant stated that he understood.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant confirmed the same. The Court asked counsel for

the Government to summarize the written plea agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with his understanding of the agreement. The Court **ORDERED** the written plea agreement filed.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Jonathan Paul Calain, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count One of the Superseding Indictment and the elements the Government would have to prove, charging him with conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The undersigned then

reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charges contained in Count One of the Superseding Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charges pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on Count One was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $1,000,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of at least three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. Defendant also understood that his sentence could be increased if he had a prior firearm offense, violent felony conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his waiver of appellate rights as follows:

Ct. Do you understand that under 18 U.S.C. § 3742, you have a right to appeal your conviction and your sentence to the Fourth Circuit Court of Appeals, provided of course that you give appropriate notice of intent to appeal after sentencing?

Def. Yes, Your Honor.

Ct. Do you also understand that under 28 U.S.C. § 2255, you may collaterally attack or challenge your sentence and how it's being carried out?

Def. Yes, Your Honor.

| | |
|---|---|
| Ct. | Did you understand that was commonly called a writ of habeas corpus type motion? |
| Def. | Yes, Your Honor. |
| Ct. | There are also other federal statutes which can be used as habeas corpus type motions statutes, do you understand that? |
| Def. | Yes, Your Honor. |
| Ct. | Do you understand that if you receive an actual sentence which is consistent with a Guideline offense level of 29, after all adjustments, then you waive your right to appeal to the Fourth Circuit and you waive your right to challenge the sentence by filing a writ of habeas corpus motion? |
| Def. | Yes, Your Honor. |
| Ct. | Well, let's just take a look at that. 29 at a Criminal History Category 0-1 is 87-108 months under the Guidelines. I'm not predicting that's your sentence, but the Guidelines call for. Your actual sentence could be different. Do you understand you're facing that much time? |
| Def. | Yes, Your Honor. |
| Ct. | Did you intend to give up those valuable direct appeal and collateral attack rights as set forth in paragraph 19 of your plea agreement? |
| Def. | Yes, Your Honor. |
| Ct. | Now, Mr. Calain, the only thing you're reserving to yourself under paragraph 19 is your ability to file a writ of habeas corpus motion if, after today, you find that there's been ineffective assistance of counsel or there has been prosecutorial misconduct in your case. Is that your understanding of paragraph 19(b)? |
| Def. | Yes, Your Honor. |

Ct.     Do you know of any prosecutorial misconduct as you sit here today?

Def.    No, Your Honor.

Ct.     Do you know of any ineffective assistance of counsel as you sit here today?

Def.    No, Your Honor.

Ct.     Have you discussed all those things with your lawyers?

Def.    Yes, Your Honor.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the conditions contained in the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count One of the Superseding Indictment, the undersigned Magistrate Judge would write the subject Report and Recommendation and would further order a pre-sentence investigation report be prepared by the

probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count One of the Superseding Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

    Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea. Defendant further stated his attorney showed him how the advisory guideline chart worked but did not promise him any specific sentence at the time of sentencing. Defendant stated that he understood his attorney could not predict or promise him what actual sentence he would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system,

although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Defendant consented to the forfeiture of the real property located at RR 1 Box 304A, Eberman's Creek Drive, Randolph County, West Virginia; $5,900.00 seized from his residence in October 2014; and one 1998 Jeep Wrangler seized pursuant to his arrest on October 24, 2014. Defendant stipulated that such property constituted or was derived from proceeds obtained directly or indirectly from his offense of conviction, or was used or intended to be used to commit or facilitate such offense. Defendant further understood that the Government would not forfeit the real property located at RR 1, Box 304A, if Defendant remits to the United States Attorney's Office a certified check in the amount of $31,600.00 by March 31, 2015.

The parties agreed that the Government would provide a proffer to provide an independent basis in fact to support Defendant's plea. The Government proffered that on January 20, 2013, Chad Arbogast was interviewed by task force officers. Mr. Arbogast stated that for the past two (2) years, he had received 30-40 30 mg oxycodone pills from Defendant every other day, and that he often went to Defendant's residence in Elkins, West Virginia, within the Northern District of West Virginia to receive the oxycodone. On June 12, 2014, Mr. Arbogast was sentenced in this Court to 46 months for his role in the distribution of oxycodone received from Defendant. Furthermore, between May and August 201, task force officers made six (6) controlled buys from co-defendant Stevie Sharp. During some of these buys, co-defendant Gregory Scott was with her. In October 2013, two witnesses stated that they had been purchasing oxycodone from Defendant, and that he kept the pills in a closet in the bathroom of his residence. That same month, officers made three (3) controlled buys from Defendant; these buys occurred within or near his residence. Also, a federal

search warrant was executed at Defendant's residence on October 10, 2013. Officers seized $9,624.00 and 400 oxycodone pills. Defendant told officers that for the past two (2) years, his sources of supply had been in New Jersey and Detroit, Michigan.

In August 2014, officers interviewed co-defendant Scott. Scott admitted that he began selling oxycodone again one month after being released from prison, and that he had been selling oxycodone for Defendant. Scott stated that the transactions occurred in Defendant's residence, and that Defendant kept the pills in his bedroom. On August 19, 2014, officers made two controlled buys of oxycodone from Defendant at Defendant's residence. The next day, a second search warrant was executed at Defendant's residence. Officers seized $6,240.00 and three (3) empty oxycodone bottles. The money seized included the buy money from August 19, 2014. On October 24, 2014, officers learned from a confidential informant that co-defendant Matthew Cordero was scheduled to travel to Elkins to provide oxycodone to Defendant. The Government obtained Criminal Complaints against both Cordero and Defendant, and both were arrested together. Prior to his arrest, Cordero threw a magnetic key holder; that holder was recovered and found to contain 52 oxycodone pills. Subsequently, a third search warrant was executed at Defendant's residence. Officers did not locate any oxycodone pills, but did locate 44 magnetic key holders.

Defendant stated he heard, understood, and did not disagree with the Government's proffer. The undersigned United States Magistrate Judge concludes the offense charged in Count One of the Superseding Indictment are supported by an independent basis in fact concerning each of the essential elements of such offense. That independent basis is provided by the Government's proffer.

Thereupon, Defendant, Jonathan Paul Calain, with the consent of his counsel, Todd La Neve, proceeded to enter a verbal plea of **GUILTY** to the felony charge in Count One of the Superseding Indictment.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing his plea; Defendant understood the charges against him, not only as to the Superseding Indictment as a whole, but in particular as to Count One of the Superseding Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed for Count One; Defendant made a knowing and voluntary plea of guilty to Count One of the Superseding Indictment; and Defendant's plea is independently supported by the Government's proffer which provides, beyond a reasonable doubt, proof of each of the essential elements of the charges to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore recommends Defendant's plea of guilty to Count One of the Superseding Indictment herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is released pursuant to the Order Setting Conditions of Release previously entered in this matter.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 12th day of February, 2015.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE